UNITED STATES of America, Appellee,

v.

Wilton CHATMAN, Appellant.

No. 77–1297.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 14, 1978.

Decided Oct. 17, 1978.

Kenneth L. Foran, Alexandria, Va., for appellant.

Daniel J. Hurson, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and PHILLIPS, Circuit Judges.

WINTER, Circuit Judge:

Wilton "Willie" Chatman, a prisoner in a Maryland institution under a Maryland conviction, wrote a letter to a district judge about a pending case in which he threatened to kill the judge. For sending the letter, he was convicted of obstruction of justice and of mailing a threatening communication in violation of 18 U.S.C. §§ 1503 and 876, respectively. The defendant declined the assistance of counsel at his trial and he attacks the validity of his conviction on the ground he was denied access to a prison library in order to prepare his defense. He also questions the sufficiency of the proof to sustain his conviction for mailing a threatening communication, because he asserts that, being already in prison, he could not have had any real intent to harm the district judge.

We see no merit in defendant's contentions. But we are constrained to reverse his convictions and award him a new trial, nonetheless, because of information furnished us by the government about the presence of a superfluous alternate juror in the jury room during a large part of the jury's deliberations.

## I.

In October 1976, defendant was an inmate of the Maryland Penitentiary in Baltimore. He was without prospect of parole or release. The Honorable C. Stanley Blair was a United States District Judge for the District of Maryland to whom had been assigned a civil rights action dealing with overcrowded conditions at the penitentiary in which defendant was one of many plaintiffs.

On October 18, 1976, Judge Blair received a letter from the defendant complaining about the manner in which Judge Blair was handling the case—essentially that relief with respect to overcrowding, inadequate diet, etc. was being unduly delayed. Defendant asserted in the letter that his patience was exhausted, that he had been subjected to inhuman conditions of confinement, and that he would "reimburse all persons" who played any part in the continuation of his durance vile. The letter con-

tinued, "the person I'm gonna begin with, is you!! YES, Judge Blair first opportunity I get, I'm going to KILL YOU, that's what I said; quote; 'I'M GOING TO KILL YOU.'" In closing, the letter added, "YOU GONNA PAY FOR THIS JUDGE BLAIR, I PROMISE YOU THAT . . .. I HAVE NOTHING TO LOSE."

At trial the proof showed that defendant's fingerprint was on the letter and that the signature was his. Indeed, later in the trial defendant acknowledged that he had sent the letter.

When arraigned, and again later at a hearing on pretrial motions, defendant declined to have an attorney appointed to represent him and firmly articulated his desire to represent himself without the aid of counsel. He does not now claim that his waiver of counsel was involuntary or uninformed. But at trial he asserted that he could not proceed because he had not been permitted access to the penitentiary library to prepare his defense. Apparently he was denied access because he was in segregated confinement for having sent the threatening letter in violation of the institution's rules and for two later assaults on prison guards. He moved the district court for a continuance of his trial until he had had library access and he moved for an order directing that he be given library access. Both motions were denied; the trial proceeded; and defendant was convicted on both charges.

## II.

■ Unquestionably defendant had a right to represent himself without the aid of counsel if he elected to do so with knowledge of his rights and the consequences of his election. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Defendant made that election and he does not question that it was made voluntarily and with knowledge of his rights. But he argues, on the authority of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that, having refused the assistance of counsel, he had a right to access to legal matters to prepare his defense and the government had an obligation to provide such access.

■ We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. It held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. *Bounds,* of course, has no direct application to defendant. He was accused of crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8 Cir. 1977).

■ In arriving at this holding, we note the absence of any evident unfairness in the treatment that defendant received. It was not unreasonable to place him in segregated confinement, after an administrative hearing, for having sent the letter. Prison authorities could properly conclude that greater security was needed in the case of a prisoner who made a death threat, lest he escape and carry out his threat. And defendant was not singled out for the prohibition against use of the prison library. It is not disputed that at the Maryland Penitentiary this restriction is applied to all prisoners in segregated confinement.

## III.

■ We see no merit in defendant's argument that the proof of his intent was legally insufficient to support his conviction

for mailing a threatening communication. The argument springs from the faulty premise that proof of intent to carry out the threat is required. The only proof of specific intent required to support a conviction under 18 U.S.C. § 876 is that the defendant knowingly deposits a threatening letter in the mails, not that he intended or was able to carry out the threat. *See United States v. Sirhan*, 504 F.2d 818, 819 (9 Cir. 1974); *Petschl v. United States*, 369 F.2d 769 (8 Cir. 1966). The specific intent to mail the letter in question in the instant case was amply proved.

## IV.

With commendable candor, the government advised us in oral argument that when the jury retired to consider its verdict, a thirteenth juror (an alternate who had not been excused) retired with the regular jurors. The alternate remained in the jury room for the first forty-five minutes of the jury's deliberations. The presence of the alternate was noticed when the jury returned to the courtroom to obtain a copy of the indictment which the jury had requested. At that time the alternate was excused, but there was neither objection to her having initially retired with the jury nor a motion for a mistrial. There was also no evidentiary inquiry to determine the extent, if at all, that the alternate had participated in the jury's deliberations. After the alternate was excused, the jury returned its verdicts of guilty within fifteen minutes.

Reluctantly (because we think that the case against defendant was so strong and his defense so frivolous), we think that we must notice the presence of the alternate in the jury room during part of the jury's deliberations as plain error, reverse the convictions and award defendant a new trial. *United States v. Virginia Erection Corporation*, 335 F.2d 868 (4 Cir. 1964), requires this result.

*Virginia Erection* was a criminal prosecution. The district court, *with the apparent consent* of counsel for the government and the defendants, permitted an alternate juror to retire with the jury when it began its deliberations. It appears that a regular juror gave evidence of being ill before the jury retired, and the district court was seeking to prevent another mistrial should that juror be unable to continue her service until a verdict was reached. The alternate was admonished not to participate in the deliberations unless a regular juror became ill or disqualified. In fact, the services of the alternate were never required.

Notwithstanding the consent of counsel and the admonition to the alternate, we held that the guilty verdicts could not be permitted to stand. We found, first, that the personal consent of the defendants to the procedure followed was not obtained as required by *Patton v. United States*, 281 U.S. 276 (1930); second, that the presence of the alternate in the jury room while the entire complement of regular jurors was deliberating was in violation of F.R.Crim.P. 23(b) and 24(c); and, third, that the admonition to the alternate did not cure the error because her mere presence in the jury room, even if she remained mute, might have affected the verdict and did violate the privacy and secrecy of the jury.

As we read *Virginia Erection*, it establishes a *per se* rule of plain error. It has been followed in *United States v. Beasley*, 464 F.2d 468 (10 Cir. 1972), and impliedly approved in *United States v. Hayutin*, 398 F.2d 944 (2 Cir.), *cert. denied*, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968); *United States v. Nash*, 414 F.2d 234 (2 Cir.), *cert. denied*, 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969); and *Leser v. United States*, 358 F.2d 313 (9 Cir.), *cert. denied*, 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966). In 2 C. Wright, Federal Practice and Procedure § 388 at 52 (1969), it is stated, "it is reversible error, even though defendant may have consented, to permit an alternate to stay with the jury after they have retired to deliberate." Only the Fifth Circuit has taken a different course, *see La-Tex Supply Co. v. Fruehauf Corp.*, 444 F.2d 1366 (5 Cir.), *cert. denied*, 404 U.S. 942, 92 S.Ct. 287, 30 L.Ed.2d 256 (1971); *United States v. Allison*, 481 F.2d 468 (5 Cir. 1973), *aff'd after remand*, 487 F.2d 339 (5 Cir. 1973), *cert. denied*, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974), but *Virginia Erection* is the law of this circuit and binding on this panel.

The instant case is indistinguishable from *Virginia Erection.* Here, no consent was given; and although there was neither objection nor motion for a mistrial, we read *Virginia Erection* to require neither. On its authority, we must reverse and grant a new trial.

REVERSED; NEW TRIAL GRANTED.