THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN E. GEORGE, Defendant-Appellant.
Second District   No. 78-578

Opinion filed June 25, 1980.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, John E. George, was found guilty of forgery following a jury trial in the Circuit Court of Du Page County and was subsequently sentenced to 3 years, 180 days, in the custody of the Illinois Department of Corrections with credit for time served. He appeals contending that his right of access to the courts was denied when, as a *pro se* pretrial detainee, his access to legal research materials was restricted by the trial court.

Defendant's first trial on the forgery charge resulted in a mistrial. Prior to retrial, defense counsel became ill and withdrew. The defendant refused an offer of representation by the public defender and elected to proceed *pro se*. Defendant then requested use of a typewriter and access to a law library in order to prepare his defense. The court ordered that a member of the public defender's office attend all proceedings and be available for consultation.

Shortly thereafter the defendant filed a motion requesting access to a law library. There being no law library in the jail complex, the State objected on security grounds. The court then requested that the State, the defendant, and the public defender as *amicus curiae* prepare memoranda of law on the rights of pretrial detainees to have access to legal research materials. Following review of these memoranda and after oral argument, the trial court resolved the issue by having the defendant convey to the public defender requests "either for cases on subject matter or for specific cases, so long as these requests are reasonable and have some relevancy to the proceedings at hand." A formal order to this effect was entered some two months prior to trial.

Prior to trial, defendant requested "McCormick's Evidence," "Jones Law Reference," information on *voir dire* examinations and opening statements, and "McGovern on Illinois Rules of Evidence." An

on-the-record discussion followed with the trial court partially denying defendant's requests. The record also indicates the public defender's office initially failed to provide some other materials requested by the defendant, but ultimately did so.

The evidence presented at trial is not directly relevant to this appeal. In brief, the complainant testified that she was induced by the defendant to cash a $200 check which the defendant signed as "John Smith" and which proved to be nonnegotiable. The defendant denied signing the check and likewise denied making any admissions to the police. The jury found the defendant guilty. The defendant's post-trial motions were denied, and he was sentenced to a term of 3 years plus 180 days.

In *Bounds v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491, the Supreme Court held that convicted prisoners have a constitutional right of access to the courts; thus, prisoners confined to a penitentiary must be allowed the use of a law library or adequate assistance from persons trained in the law. In *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525, the Supreme Court held that an accused has a constitutional right to represent himself *pro se.* Relying on *Bounds* and *Faretta,* defendant contends that he was denied his constitutional right to adequately research his case.

In *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56, the court specifically rejected the contention that an incarcerated *pro se* defendant must be afforded access to a jail law library:

> "Where a prisoner in custody knowingly and voluntarily elects to manage his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. The constitution does not require in the case of a prisoner who elects to represent himself *pro se* that he be exempted from regular jail procedures and searches, and no duty exists, where such facilities are not commonly available in a common jail, to provide him law books, or private telephones, or unlimited access to witnesses, investigators or other items he may feel necessary. By electing to represent himself, a prisoner in custody may not expect favored and privileged treatment even though the result may be that he is less effective as his own attorney." (33 Ill. App. 3d 574, 591, 338 N.E.2d 56, 69-70; see also *People v. Hanna* (1977), 48 Ill. App. 3d 6, 362 N.E.2d 424.)

The defendant, however, claims that *Bounds* "indirectly" overrules *Heidelberg* and *Hanna.* We are not persuaded.

The issue in *Bounds* was whether already convicted prisoners had to be provided with access to law libraries or alternative sources of legal knowledge. *Bounds* cannot, therefore, be said to directly control the question here of whether a conviction may be overturned based on a

claim that a *pro se* defendant was denied access to legal materials.[1] Also *Bounds* was clearly not making new law. Indeed, Justice Marshall, speaking for the court, phrased the question in *Bounds* as whether the court would overrule or affirm its *per curiam* opinion in *Younger v. Gilmore* (1971), 404 U.S. 15, 30 L. Ed. 2d 142, 92 S. Ct. 250. Under *Younger*, prisoners have since 1971 been assured of either access to legal materials or some alternative source of legal information. See, for example, *Cruz v. Hauck* (5th Cir. 1975), 515 F.2d 322, 331.

In *United States v. Chatman* (4th Cir. 1978), 584 F.2d 1358, the court was faced with the identical issue raised in the instant case. In *Chatman* the defendant declined the assistance of counsel at trial and later attacked the validity of his conviction on the ground that he was denied access to a prison library in order to prepare his defense. The court rejected the defendant's contention:

> "Unquestionably defendant had a right to represent himself without the aid of counsel if he elected to do so with knowledge of his rights and the consequences of his election. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Defendant made that election and he does not question that it was made voluntarily and with knowledge of his rights. But he argues, on the authority of *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), that, having refused the assistance of counsel, he had a right to access to legal matters to prepare his defense and the government had an obligation to provide such access.

> We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. It held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' 430 U.S. at 828, 97 S. Ct. at 1498. *Bounds*, of course, has no direct application to defendant. He was accused of crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States

---

[1] Indeed, the defendant has not cited, nor has our own research located, a single case in any jurisdiction where a conviction has been overturned on this basis.

satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West*, 557 F.2d 151 (8 Cir. 1977)." (Emphasis in original.) (584 F.2d 1358, 1360.)

In the instant case, however, we need not base our decision solely on an absolute rule that the declined offer of appointed trial counsel satisfied any obligation to provide access to legal materials.

■■ ■ At most *Bounds* can be read to require authorities to provide prisoners with "adequate law libraries *or adequate assistance from persons trained in the law.*" (Emphasis added.) (430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498.) It is clear, then, that a prisoner has no right to select the form his access to legal materials is to take. In the instant case, the defendant was aided by an assistant public defender who attended all proceedings and was available for consultation. As noted above the court also entered an order establishing a procedure whereby the public defender's office would respond to reasonable requests for copies of legal materials including cases by subject matter. While the court rejected as unreasonable some of the defendant's requests for secondary sources, it did supply him with McCormick on Evidence, IPI Criminal, and Illinois Criminal Law and Procedure for 1978. The defendant, quoting from *Williams v. Leeke* (4th Cir. 1978), 584 F.2d 1336, 1339, argues that without sources such as citators and digests a defendant would not know what case materials he should request. However, in *Leeke* the court went on to rule that direct access to the library was unnecessary as the State authorities also provided trained legal assistants to aid prisoners in filing legal papers. In the instant case if defendant George was in need of help in exploring a particular issue, the public defender's office was available to help him do so. See also *United States v. West* (8th Cir. 1977), 557 F.2d 151.

For the foregoing reasons the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.