Favis Clay MARTIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 81–1908.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1982.

Decided Aug. 4, 1982.

Rehearing and Rehearing En Banc Denied Sept. 10, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1207.

Steven A. Muchnick, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., Kathianne Knaup, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT, HENLEY and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Favis Clay Martin appeals his conviction on two counts of sending threatening letters through the mail (18 U.S.C. § 876). Martin urges that the district court erred in failing to grant a mistrial when one of the jurors was found unfit to serve and replaced with an alternate, in denying a motion to suppress statements when Martin had refused to sign the *Miranda* waiver form, in overruling motions for acquittal because the evidence was ambiguous as to whether the letters were threatening, in giving certain instructions, and in denying motions for continuance and discharge of counsel. We affirm.

Martin in 1970 was convicted of murdering his wife as a result of a custody dispute and received a life sentence. A sister of the deceased wife and her husband adopted the child of the marriage, and Martin's alleged threatening letters were directed to the attorney representing the family, Mark I. Bronson, and the Judge, Gary M. Gaertner. Martin was sentenced to a 5-year term on each count. The sentences are to run concurrently with each other and consecutively with the term Martin is serving in the Texas Department of Corrections for the murder.

### I.

After the jury was instructed, the alternate juror was excused and the jury retired at 4:38 p. m. Moments thereafter the district judge[1] received word of bizarre behavior on the part of one of the jurors, Mr. Burst. A law clerk of one of the judges and an FBI agent reported to the judge that the juror had told several people that he was an assistant bailiff or marshal and had stopped a number of individuals asking for their identification and the nature of their business in the area. The FBI agent reported that the juror had attempted to go into the chambers of one of the other judges, again stating that he was an assistant bailiff or marshal.

The district judge, upon receiving these messages, immediately sent the clerk to direct the jury not to begin deliberating and to hold up on doing anything until further word was given. The clerk was instructed to bring juror Burst to the courtroom. The alternate juror either had not left the courtroom or was in the hallway a few steps from the door and he was asked to return to the courtroom and be seated. At 4:55 p. m. in chambers the district judge conferred with counsel and defendant and made the following statements:

> The jury has not deliberated ... the jury could not deliberate and they have not deliberated at this time....
>
> The Court is of the opinion that there has been no deliberations ... so no deliberations have taken place.

A motion for mistrial was made by defendant and denied. The court discharged juror Burst on the ground that he was mentally and physically incapable of serving and substituted the alternate juror. The jury was then ordered to begin their deliberations.

Martin argues that the substitution of the alternate juror violated Federal Rule of Criminal Procedure 24(c), which provides as follows:

> ... Alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires to consider its verdict*, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be *discharged after the jury retires to consider its verdict*.... (Emphasis added.)

The issue is whether in this case the jury had retired to consider its verdict.

Under the particular circumstances presented in this case, we conclude that, although the jury had left the courtroom, because the deliberations had not commenced[2] the jury had not retired to con-

1. The Honorable Clyde S. Cahill, Jr., United States District Judge for the Eastern District of Missouri.

2. The findings of the district judge that the jury had not deliberated are not questioned. He

sider the verdict, and the substitution of the alternate juror was proper.

Similar circumstances were involved in *United States v. Cohen*, 530 F.2d 43, 48 (5th Cir. 1976), where a "sleeping juror" was replaced with an alternate. The jury had been kept waiting in the hallway outside the courtroom. The court ruled:

> Appellant's interpretation is too formalistic. Although the jury had been ordered to retire, it had not yet done so because the jurors had never begun their deliberations. We find no violation of the rule.

In *Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300, 304 (10th Cir. 1971), an alternate was substituted "just as the jury prepared to deliberate" when a bailiff heard one juror remark that he did not want to serve on the jury and had fear for his job since he was a union member. The major complaint raised in *Metropolitan Paving* was whether the district court had cause to replace the juror. This issue is not raised in the case before this court.

A regular juror had a heart attack and was replaced with an alternate two days after deliberations commenced following a four-month-long trial in *United States v. Phillips*, 664 F.2d 971, 990–96 (5th Cir. 1981). In considering the replacement under the language of Rule 24(c), the court concluded that the primary questions were whether there had been prejudice and whether there was any coercion. In *Phillips*, the trial court went to elaborate lengths to insure that deliberations commenced anew after replacement of the alternate. In the case before us, with the findings of the district court that deliberations had not commenced, it cannot be said that defendant Martin was in any way prejudiced by replacement of the alternate for the juror found to be mentally and physically incapable of serving. We also consider that "declaration of a mistrial would be

improvident if substitution of an alternate juror would permit the trial to proceed to a just verdict." *Whitfield v. Warden of Maryland House of Corrections*, 486 F.2d 1118 (4th Cir. 1973), *cert. denied* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1973).

Martin cites a number of cases disapproving substitution of a juror, but these decisions are distinguishable on their facts. In *United States v. Lamb*, 529 F.2d 1153, 1156 (9th Cir. 1975), the jury had reached a verdict, which the court rejected, before the alternate juror joined the deliberations. The court found impermissible coercion on the alternate juror. *United States v. Allison*, 481 F.2d 468 (5th Cir. 1973), *appeal after remand* 487 F.2d 339 (5th Cir. 1973); *United States v. Hayutin*, 398 F.2d 944 (2d Cir. 1968); *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972); *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978); and *United States v. Virginia Erection Corp.*, 335 F.2d 868 (4th Cir. 1964), all involved situations where the alternate jurors were not discharged when the jury retired to deliberate. Convictions were affirmed in *Allison* and *Hayutin* when it was determined that the alternates did not participate in or in any way affect the jury's deliberation. However, in *Beasley*, *Chatman* and *Virginia Erection* convictions were reversed because of the alternate juror's presence in the jury room and possible effect on deliberations.

Martin argues that the jury retired to consider its verdict the minute it left the courtroom. As observed in *Phillips*, *supra* at 993, relying on *Fallen v. United States*, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964), the Federal Rules of Criminal Procedure "are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances." Martin would give such an inflexible meaning to the rule, contrary to

---

was in a position to observe and make these findings, which are similar to the district judge's observation that a juror did not sleep, *United States v. Curry*, 471 F.2d 419, 422 (5th Cir. 1973), and determinations as to whether a juror had formed an opinion on issues in a

case. *Brickey v. United States*, 123 F.2d 341, 346 (8th Cir. 1941); *United States v. McNally*, 485 F.2d 398, 403 (8th Cir. 1973). Our examination of the record fails to disclose any basis for concluding that the findings of the district judge constitute manifest error.

the provisions of Rule 2, Fed.R.Crim.P., that the rules are intended to provide for just determination of every criminal proceeding and shall be construed to secure simplicity, fairness and the elimination of unjustifiable expense and delay.

Martin relies on *Ex Parte Shirley,* 39 Ala.App. 634, 106 So.2d 671 (1958), in which the court concluded that the phrase "the jury retires" means "retire[d] to deliberate and reach a verdict." This definition is in accord with the wording of Rule 24(c), "retires to consider its verdict" and gives further weight to our conclusion that retiring means more than simply leaving the courtroom, but requires retirement to deliberate or consider the verdict.

The district court was faced with a difficult decision in this case, but its action in promptly removing a juror of questionable stability and the substitution of the alternate did not violate Rule 24(c). Martin makes no claim that the action presented a constitutional question.

## II.

■ Martin claims the district court erred in denying the motion to suppress his statement to FBI agent Hartung, urging that there was no waiver of his constitutional rights.

Martin made a statement to Hartung in the warden's office at Huntsville, Texas on June 18, 1979. Hartung gave defendant the bureau's "advice of rights" form and asked him to read it. Martin read the first sentence aloud to Hartung, the remainder to himself, and said that he understood it, but refused to sign the waiver of rights form. The interview then proceeded with Martin talking freely and without hesitation or reluctance. He admitted writing the letters and showed Hartung his typewriter. The statement was introduced at trial. A similar procedure was held not to violate the rights guaranteed by *Miranda* in *North Carolina v. Butler,* 441 U.S. 369, 376, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979), where the court concluded that waiver can be clearly inferred from the actions and words of the person interrogated. See also,

*Klingler v. United States,* 409 F.2d 299, 308 (8th Cir. 1969); *United States v. Ellis,* 457 F.2d 1204, 1207 (8th Cir. 1972); *United States v. Hart,* 557 F.2d 162, 164 (8th Cir. 1977); and *United States v. Johnson,* 529 F.2d 581, 584 (8th Cir. 1976). The court's denial of the motion to suppress was not clearly erroneous.

## III.

■ Martin argues that the motion for acquittal should have been sustained because the evidence was ambiguous as to whether the letters in issue were threatening. An ambiguous letter cannot violate 18 U.S.C. § 876. *United States v. Barcley,* 452 F.2d 930 (8th Cir. 1971). The letter to the lawyer, Bronson, contained the following language:

> I don't know if the Abuchon's told you are not, but the reason their sister is in her grave, and I am in prison, is because of the arguments we had over the custody of this child.
>
> \*    \*    \*    \*    \*    \*
>
> I don't need any Court to vacate the adoption, when you stop and think about it. But, I prefer to seek Judicial relief if possible. When there is no remedy left, then I'll go for broke, should that happen, we will all burn in hell together.
>
> \*    \*    \*    \*    \*    \*
>
> I'm trying to do the Aubuchon's a favor. They best realize that. I'm 42 years old, and I'll not be locked in prison the rest of my natural life. They best think about it. Their sister did't!!! [sic]

Martin, having killed his wife (the sister of the Aubuchons), in making the statements in the letter directed to Bronson, cannot claim that the above paragraphs of the letter are in any way ambiguous. In the letter to Judge Gaertner, the following language appears:

> You see sir, without my child, I just don't really give a [expletive deleted] about life, therefore, if it be necessary, I will vacate the adoption without the aid of the Court, and in so doing I got no scruples.

I have tried legally to vacate the adoption, the reason for that is because god only knows I do not want any more trouble. But sir, you son of a bitch, I'll see you in hell before I permit you to do this to me and my son.

You best think about the seriousness of this matter before its to late. I'm telling you this because I mean every word of it. If you care anything atall about the child and others involved you best do somthing. They can't keep me in Texas forever, and Mister You and Dean or the two I hold personally responsible.

I don't care what happens to me so long as I know you didn't enjoy your immunity. And you want! [sic]

■ Again, Martin cannot seriously claim ambiguity in these statements. The letters contain a determination or intent to injure presently or in the future. *United States v. Metzdorf*, 252 F. 933, 938 (D.Mont.1918). The question of whether the language constitutes a threat is an issue of fact for the jury. *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir. 1979). If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury. *United States v. Maisonet*, 484 F.2d 1356 (4th Cir. 1973).

In *Barcley, supra,* the court found that the language was equivocal and that neither recipient of the letter experienced fear upon reading the letter. In this case the language of the letter was clear and in the context of Martin's conviction for the murder of his wife, the expressed concern of the recipients of the letter, Bronson and Judge Gaertner, was understandable. The district court did not err in denying the motion for acquittal.

### IV.

Martin objects to a number of instructions given by the district court and to the refusal of certain language proposed on his behalf.

■ The court instructed that every person has a right to communicate with public officials calling attention to improper conduct and that the language used may be vehement, vituperative or abusive without violating the law. The court refused to add two proposed sentences that a person has the right to seek removal of a public official and that a threat to seek removal or damage his reputation is not a violation of the law. There was no evidence to support the proposed language refused by the court, and Martin demonstrates no error of the district court in so refusing. *United States v. Fuel*, 583 F.2d 978 (8th Cir. 1978).

■ The court instructed that the government had the burden to establish beyond a reasonable doubt that the communication conveyed a threat of injury and unless the jury so found it must find the defendant not guilty, but refused a proposed sentence that if the language was susceptible of two interpretations, one threatening and the other non-threatening, the government had the burden to remove the ambiguity. *United States v. Barcley, supra,* finding ambiguity defeated submissibility, does not require such an instruction in a case in which we have concluded the letters are not ambiguous. The instruction given and other instructions treating the burden of proof adequately covered the substance of the request. *United States v. Fuel, supra.*

■ The instruction that actual capability to successfully accomplish the threat is not an element of the offense was proper because of defendant's incarceration. The instruction that the evidence of Martin's earlier offense could be considered for no purpose other than to establish intent and the meaning of the letters was properly given to limit the jury's consideration of this evidence.

We conclude that the instructions, considered as a whole, properly instructed the jury, and we cannot conclude that Martin has demonstrated any prejudicial error in the instructions.

### V.

Martin claims that the district court erred in refusing to grant a continuance so as to allow him to discharge his appointed

counsel and obtain a lawyer of his own choosing. Martin on June 12, 1981 filed a motion to allow him to dismiss his appointed counsel and on July 8 filed another motion raising, among other issues, his difficulties in communicating with his appointed counsel because he was in jail in Belleville, Illinois, and asking that the court stay proceedings scheduled for July 20, 1981. A motion for continuance was also filed by Martin's counsel, although the date of this motion is uncertain.

On the morning of the commencement of trial the district judge considered the motions for continuance and discharge of counsel in three segments[3] and found that in the several months the case had been pending Martin had not made efforts to obtain another lawyer, that the lawyer appointed to defend him, Frank Anzalone, was an experienced attorney with the finest reputation, and that Martin had not established that he had sufficient funds available to hire a lawyer to try the case. The motions were denied.

■ We find that the court did not err in overruling Martin's motion for continuance and to discharge counsel. This court in *United States v. Sturgeon*, 501 F.2d 1270, 1275 (8th Cir. 1974), and *United States v. Leach*, 429 F.2d 956, 963 (8th Cir. 1970), held:

> The granting of motions for continuance before or during trial is discretionary with the trial court, and in the absence of clear abuse of discretion the action of the trial court will be sustained.

The cases cited by Martin, *United States v. Mardian*, 546 F.2d 973 (D.C.Cir.1976), and *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961), both involved the unavailability of retained counsel because of illness. *Lee v. United States*, 235 F.2d 219 (D.C.Cir. 1956), involved unavailability of counsel because of withdrawal and conflict of interest.

Martin had no right under the Constitution to insist that his trial be held in abeyance while he replaced a competent attorney with another, particularly where the possibility of obtaining another was uncertain. *United States v. Bragan*, 499 F.2d 1376, 1379 (4th Cir. 1974). He has no right to refuse appointed counsel[4] without showing that he had another counsel, without a valid waiver of counsel, or without giving an adequate reason for dismissal of counsel. *United States v. Jones*, 369 F.2d 217, 219 (7th Cir. 1966). Here there was no showing that Martin had made any effort to obtain another lawyer in the four months that the case was pending and the district court found no adequate reason for the dismissal of his appointed counsel.

We find no error in any of the respects urged, and we affirm the judgment of the district court.

HENLEY, Senior Circuit Judge, concurring.

I concur in the court's decision, but am impelled to write on the matter of proof of a threat.

An indispensable ingredient in a prosecution under 18 U.S.C. § 876 is proof that a letter written by the accused conveys a threat of injury. *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir. 1979); *United States v. Barcley*, 452 F.2d 930, 933 (8th Cir. 1971). In determining whether the requisite threat exists this court and other courts of appeal have tended to frame the inquiry in terms of the defendant's intent and have looked principally to the language of the letter and the facts immediately surrounding the use of that particular language rather than the totality of circumstances. *E.g., United States v. Lincoln, supra; United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978). This approach, however, does not squarely address the question what is a

---

**3.** One in which Martin refused to make any statements at all to the court, one after recess, in which Martin participated substantially, and after another recess, yet another session in which the court considered Martin's request for a continuance of five weeks to two months and the opportunity to discharge his counsel.

**4.** The district court ruled that Martin could serve as his own attorney and ordered Mr. Anzalone to remain and advise on legal matters, with the understanding that the two would not both be allowed to ask questions before the jury. The record reflects that after this ruling the trial was conducted by Mr. Anzalone.

threat. The focus in deciding whether the language and its necessary implications constitute a threat should be the effect on an ordinary, reasonable recipient who is familiar with the total context in which the letter was written. *See United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir. 1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974); *United States v. Barcley,* 452 F.2d at 934 (Aldrich, J., dissenting); *United States v. Prochaska,* 222 F.2d 1, 2 (7th Cir.), *cert. denied,* 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed.2d 746 (1955). Certainly, "[a]ll . . . the circumstances known to the recipient [should] be considered." 452 F.2d at 934 (dissenting opinion) (emphasis added). Under this standard, a statement contained in a communication would be criminal only if it instilled in a reasonable and informed recipient an apprehension of impending bodily harm. *See United States v. Maisonet,* 484 F.2d at 1358; *United States v. Prochaska,* 222 F.2d at 2.

While the government must establish the threatening nature of the communication in question, it need not prove that the accused has the capability of successfully carrying out the threat. *United States v. Lincoln,* 589 F.2d at 381; *United States v. Chatman,* 584 F.2d at 1361. Nevertheless, I am not convinced that the accused's ability or inability to accomplish the threatened action is always irrelevant in prosecutions under section 876. Capability of carrying out the threat may, in instances, be part of the aggregate of circumstances that the jury should be required to consider in determining whether the language used amounted to a threat. Indeed, excluding this matter from jury consideration, especially in situations in which it appears that the threatened action is either inherently impossible or is not capable of being accomplished at any time short of the distant future, may foreclose a proper resolution of the nature of the language by not allowing the jury to gauge accurately whether a recipient who knew that there was only a remote possibility of harm *reasonably* feared bodily injury. The defendant, in my view, is entitled to have the jury determine whether a threat was made by reading and considering the language used in the totality of circumstances, including the impossibility or unlikelihood of performance, particularly as the facts were known to the recipient.

As to the case at hand, I am satisfied that the jury instructions as a whole adequately covered the essential principles. Although the defense objected to certain instructions at trial, it did not object to the instruction defining a threat as "a statement expressing an intention to inflict bodily injury upon someone." Moreover, defense counsel did not specifically request or submit an instruction expanding on this definition. Finally, I note that although appellant Martin was serving a life sentence, he apparently would have become eligible for parole consideration in summer, 1981. This circumstance clearly minimized or rendered moot any issue that might have been suggested concerning Martin's ability to carry out within a reasonable length of time the threats contained in his letters. Thus, I have no difficulty in concurring in the result reached by the court.