UNITED STATES of America ex rel.
John E. GEORGE,
Petitioner-Appellee,

v.

Michael LANE, Respondent-Appellant.

No. 82–2260.

United States Court of Appeals,
Seventh Circuit.

Argued March 28, 1983.
Decided Sept. 23, 1983.

Marcia L. Friedl, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

David S. Morris, Morris & James, Chicago, Ill., for petitioner-appellee.

Before CUMMINGS, Chief Judge, BAUER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This is an appeal from an order and decision of the District Court for the Northern District of Illinois, Eastern Division, the Honorable Thomas R. McMillen, presiding. The district court's order granted the petitioner-appellee's Cross-Motion for Summary Judgment and issued the petitioner a writ of habeas corpus. We hold that when a defendant (pretrial detainee) is offered the assistance of appointed counsel and refuses the same, no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he choose to refuse the services of court-appointed counsel. Accordingly, the order of the district court is REVERSED.

I.

John E. George was charged with committing forgery in Du Page County, Illinois. The Public Defender's Office was appointed to represent George and on August 9, 1977, George pleaded not guilty to the crimes of forgery and two burglary charges. The defendant and the state entered into a plea bargain, with court approval, whereby George agreed to plead guilty to one burglary count on the condition that the remaining burglary and forgery charges were to be *nolle prossed.* On October 31, 1977, George asked the court for leave to withdraw his plea of guilty to the burglary charge and to substitute private counsel. The court allowed the defendant to withdraw his plea and substitute private counsel.

One month later, on November 21, 1977, the petitioner George again changed his mind and rather than proceeding with his own private counsel he requested that he now be allowed to proceed *pro se.* The court questioned George about his desire to proceed *pro se* and explained all the ramifications and pitfalls of proceeding *pro se* as compared to the advantages of proceeding with counsel. At this time the court appointed Attorney Dominick Dolci as "standby" counsel and advised the defendant that he was to consult with Dolci in the event that he desired legal advice during trial. The petitioner informed the court that: "if you are going to appoint him in an advisory capacity, I wouldn't look for him to get paid under the statutes because I don't want him, in accordance with the statute. You would just be giving him the county money for nothing."

On January 10, 1978, the petitioner changed his mind for the third time regarding his negotiated plea and asked leave to withdraw his plea of not guilty to the burglary charge and enter a plea of guilty to one burglary charge on the condition that the state would not prosecute the other burglary or forgery charges. During his appearance before the court on that date George changed his mind another time regarding a plea agreement and requested he be allowed to withdraw his plea of guilty. The trial court granted the petitioner's request to withdraw his plea of guilty and the case was continued until January 23, 1978.

Again on January 23, 1978, the court, *sua sponte,* advised George for the second time of the disadvantages he would face proceeding *pro se* and at this time the petitioner informed the court that "after explaining this to me in this regard, I feel it would be best that Mr. Dolci be counsel." The trial court granted the petitioner's request that Attorney Dolci be his counsel and Dolci was directed to actively represent George. On March 7, 1978, the forgery case proceeded to trial before the Honorable Helen C. Kinney and mid-way through the trial George's motion for a mistrial was granted. The court set the case for retrial on April 20, 1978.

Prior to the petitioner's second trial his appointed counsel Dolci became ill in court and was rushed to a hospital. Counsel subsequently notified the court that upon the

orders of his doctor he was discontinuing his trial practice, including George's representation. The day following the date of the scheduled trial, April 21, 1978, Judge Kinney offered to appoint another lawyer for George and give counsel time to prepare for trial. Petitioner George now advised the court that he was "not satisfied with an attorney out here in Du Page County" and that he would proceed *pro se.* The court again (third time) thoroughly advised the defendant of the inherent problems with proceeding *pro se* and reminded him that he had a right to appointed counsel and recommended to George that he take advantage of the assistance of counsel.

On May 2, 1978, petitioner George requested that Judge Kinney provide him with a typewriter, the use of a law library and "the same facilities that a bar association lawyer would get." In support of his request, George argued that he had a "right to proceed pro se without a legal advisor or without anything." The court again, for at least the *fourth* time, advised the petitioner of his right to counsel and of the disadvantages of proceeding *pro se* and the possible sentence he could receive upon conviction. After making a finding that the defendant intelligently, knowingly and voluntarily waived his right to appointment of counsel, Judge Kinney, in order to protect the interests of the defendant, appointed an assistant public defender to be available at all proceedings to assist George if the petitioner again changed his mind. George was also advised that he could, at any time during trial, request that the Office of the Public Defender give him advice or take over his defense. On May 4, 1978, George filed a written motion with the court requesting that he be provided with: "(1) white legal paper; (2) a typewriter; (3) use of a law library; (4) use of a photocopying machine; (5) legal pads; (6) paper clips; (7) rubberbands; and (8) a copy of Chapter 38 of the Illinois Revised Statutes." In court that day, the petitioner advised the judge that he had not served his "stand-by" counsel with the motion because: "I don't need an advisor" and "I don't like copies of my materials going to someone whom I'm not going to use." The State strenuously objected to the petitioner's request to use a law library based upon the serious logistic, personnel and security problems it would create in the administration of a detention facility. Judge Kinney at this time directed the Public Defender to submit an *amicus curiae* memoranda of law addressing the rights of pre-trial detainees to have access to legal research material. After reviewing the briefs and hearing oral argument, Judge Kinney ruled on George's motion as follows:

"You have asked for legal paper for motions, plain white, and a typewriter.

"I think that it comes down to how far can I go to meet your needs without unreasonably interfering with the jail procedures.

"I do want to extend you every reasonable help that I can in the preparation of your own defense.

"As to legal paper, plain white, for motions and a typewriter, I am going to deny them.

"And I am going to provide you in lieu thereof three yellow ruled legal pads.

"I have no objection whatsoever to accepting your ink-written motion.

"You have asked for use of a photocopying machine.

"I will undertake to provide any reasonable photocopying that is required.

"You do not need to write out several sets of the same motion or any pleading or anything you wish to present.

"If you write out the original, the Court will provide the duplication of it.

"Fifteen paper clips and ten rubber bands I do not see are essential, and I will deny that request.

"You have told me, and I agree with you, that you do not have a copy of House Bill 1500.

\*       \*       \*       \*       \*       \*

"Here is a copy for you. It's Illinois Criminal Law and Procedures for 1978. It was given to me within the last several weeks. It's been newly obtainable.

"I will provide you with this copy along with the three yellow legal pads.

\*   \*   \*   \*   \*   \*

"Now, as to the other things, the access to the law library, as a very practical matter I only know of one way to let you do your own research in a law library, and that would be for me to order a deputy sheriff to stay with you in the library.

"I think that's impractical.

"I think its a request with which I cannot comply without interfering with jail procedures.

"However, I do have the public defender standing by to assist you as you need assistance.

"I also have requested the public defender to act as *amicus curiae* and assist the Court with this motion.

"They have done so. They have provided me with an excellent brief.

\*   \*   \*   \*   \*   \*

"I know that the jail has facilities for you to contact the public defender.

"And I am going to resolve the issue of the use of a law library by having you convey your request to the Public Defender's Office either for cases on subject matter or for specific cases, so long as those requests are reasonable and have some relevancy to the proceedings at hand.

"I am going to request the public defender to respond within reasonable time to your requests either by furnishing you with the book containing the case, which you are required to preserve and return intact within a reasonable time, or, alternatively, to provide you with a xeroxed copy of materials.

"Now, I want to tell you that I'm going to hold this to reasonable cooperation, and we are not engaged here in matters which go beyond what is reasonable.

"I have done the best I can to provide you with the materials you have requested which can be provided without interference with each other's interest."

On July 17, 1978, the public defender advised the court that George had earlier requested copies of certain cases and that they had supplied him (George) with them. On July 20, 1978, the assistant public defender notified Judge Kinney that the petitioner wanted additional research materials and requested the court indicate whether all of the petitioner's requests should be complied with. The public defender informed the court that he "certainly [didn't] mind supplying cases, and [he had] done that in the past; but to transport [his] whole law library over to the jail" wasn't what he thought the court's order encompassed. After reviewing the petitioner's requests, Judge Kinney directed the Public Defender's Office to provide the petitioner with the following: (1) copies of Illinois Supreme Court Rules 234 and 235, and § 67 of the Civil Practice Act; (2) copies of certain requested cases; and (3) subpoena forms. The court also agreed to make a copy of *McCormick on Evidence* and the Illinois Pattern Jury Instructions available to the petitioner in the courtroom during the course of the trial. Before his trial, the Public Defender's Office provided the petitioner with the court-approved legal materials including copies of the rules and cases and subpoena forms.

The petitioner's forgery case proceeded to trial on July 25, 1978 and was concluded that same afternoon with the jury finding George guilty. After a hearing, the petitioner was sentenced to a term of imprisonment of three years plus 180 days.

The petitioner appealed the decision of the trial court to the Illinois Appellate Court. *People v. George,* 85 Ill.App.3d 443, 40 Ill.Dec. 733, 406 N.E.2d 936 (1980). The appellate court held that, at most, the petitioner had a right to be provided with an "adequate librar[y] *or adequate assistance from persons trained in the law.*" *George,* 40 Ill.Dec. at 735, 406 N.E.2d at 938 (emphasis original) (quoting *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). The appellate court also noted that an earlier Illinois case, *People v. Heidelberg,* 33 Ill.App.3d 574, 338 N.E.2d 56 (1975), specifically rejected an argument

that an incarcerated *pro se* defendant must be afforded access to a law library. The *Heidelberg* court held that:

"Where a prisoner in custody knowingly and voluntarily elects to manage his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. The constitution does not require in the case of a prisoner who elects to represent himself pro se, that he be exempted from regular jail procedures and searches, and no duty exists where such facilities are not commonly available in a common jail, to provide him law books, or private telephones, or unlimited access to witnesses, investigators or other items he may feel necessary. By electing to represent himself, a prisoner in custody may not expect favored and privileged treatment even though the result may be that he is less effective as his own attorney."

*Id.,* 338 N.E.2d at 69–70.

In George's habeas corpus petition to the district court, the petitioner again raised the "law library access" question previously presented to the appellate court of Illinois. On June 29, 1982 the district court, without the benefit of an evidentiary hearing, granted the petitioner a writ of habeas corpus and ordered that he be released. The district court, extending *Bounds* beyond its holding, found that, as a matter of law, "[w]hen a defendant desires to defend himself without legal counsel, the court cannot require [him] to accept a standby public defender as a substitute for access to legal materials."

## II. ISSUE INVOLVED

Can a prisoner confined prior to trial who is offered the assistance of court-appointed counsel refuse the same, calculatedly elect to go *pro se* and insist under the Constitution (Sixth and Fourteenth Amendments) that he is entitled to unlimited access to "the same facilities that a bar association lawyer would get?"

## III.

It is clear that the defendant George believes that he has the constitutional right to determine whether he will accept court-appointed counsel or require the state to provide him with free and unlimited access to a law library. George bases his contention on *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) and *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

In *Bounds,* the Court held that:

"the fundamental constitutional right of access to the courts requires prison authorities to assist inmates [convicted prisoners] in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law."

*Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498 (emphasis added). In *Faretta,* the Court recognized a Sixth Amendment "right of self-representation" which allows a defendant to refuse the assistance of trained counsel and conduct his own defense. *Faretta,* 422 U.S. at 832, 95 S.Ct. at 2539.

However, as this court most recently stated in *Johnson by Johnson v. Brelje,* 701 F.2d 1201 (7th Cir.1983):

"It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491 [1494], 52 L.Ed.2d 72 (1977). We have held that this right is possessed not only by convicted prisoners, but by pre-trial detainees who are jailed pending trial. *See Lock v. Jenkins,* 641 F.2d 488, 498 (7th Cir.1981)."

*Id.* at 1207.

The court further noted that "[t]he right of access is satisfied if, in lieu of a law library, adequate assistance of counsel is provided." *Id.* at 1208.

When reviewing George's direct appeal, the Illinois appellate court likewise held that "[a]t most *Bounds* can be read to require authorities to provide prisoners with 'adequate law libraries *or adequate assistance from persons trained in the law.'*" *People v. George,* 85 Ill.App.3d 443, 40 Ill. Dec. 733, 735, 406 N.E.2d 936, 938 (1980)

(emphasis original) (quoting *Bounds v. Smith,* 430 U.S. at 828, 97 S.Ct. at 1498). In addition to its reliance on *Bounds* and the Illinois *Heidelberg* decision, the court found the reasoning of the Fourth Circuit in *United States v. Chatman,* 584 F.2d 1358 (4th Cir.1978), to be persuasive. In *Chatman* the court was faced with a situation similar to the one involved herein where a defendant declined the assistance of counsel and requested law library access. The court denied the defendant's request and he later attacked the validity of his conviction on the ground that his defense was hampered by denial to a law library. The *Chatman* court rejected the defendant's contention stating:

"Unquestionably defendant had a right to represent himself without the aid of counsel if he elected to do so with knowledge of his rights and the consequences of his election. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Defendant made that election and he does not question that it was made voluntarily and with knowledge of his rights. But he argues, on the authority of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that, having refused the assistance of counsel, he had a right to access to legal matters to prepare his defense and the government had an obligation to provide such access.

"We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. It held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' 430 U.S. at 828, 92 S.Ct. at 1498. *Bounds,* of course, has not direct application to defendant. He was accused of [a] crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-convic-

tion relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8th Cir.1977)."

584 F.2d at 1360 (emphasis original).

Likewise, the Ninth Circuit in *United States v. Wilson,* 690 F.2d 1267 (9th Cir. 1982), rejected a defendant's argument that the Sixth Amendment right to self-representation recognized by the Supreme Court in *Faretta* implies a right of access to legal facilities and materials necessary to prepare legal arguments and documents where the assistance of court-appointed counsel is refused. The *Wilson* court noted that in deciding *Faretta:*

"[T]he Court specifically recognized that a criminal defendant who exercises his right to reject counsel necessarily relinquishes many of the benefits associated with representation by counsel. Nowhere did the *Faretta* Court suggest that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation. We decline to interpret the right to self-representation under the Sixth Amendment to include a right to conduct one's own research at government expense."

*United States v. Wilson,* 690 F.2d at 1271.

█ We agree with the Ninth Circuit and hold that the offer of court-appointed counsel to represent a defendant satisfies the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments. George rejected numerous offers of counsel and after changing his choice of representa-

tion on numerous occasions, he finally insisted upon personally conducting his own legal research and defense, even though there was no library contained within the secured confines of the local county detention facility in which he was being detained.

█ A criminal defendant certainly has a right to refuse counsel and conduct his own defense *in propria persona. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Having asserted this right, the question becomes, according to at least one district court, "[D]oes a defendant in the lawful custody of the state then have the right to demand and receive for his use a fifteen thousand dollar law library?" *Bell v. Hopper,* 511 F.Supp. 452, 453 (S.D.Ga. 1981). The *Bell* court "opine[d] that he does not." *Id.* Furthermore, neither does the defendant have a constitutional right to access to a computerized legal research system, paralegal training or a full-fledged law school education. *See Myron v. State,* 248 Ga. 120, 281 S.E.2d 600, 603 (1981), *cert. denied,* 454 U.S. 1154, 102 S.Ct. 1025, 71 L.Ed.2d 310 (1982).

As further noted by the *Bell* court:

"A trial court cannot deny a defendant the freedom to chose to represent himself so long as he is competent to make the choice; this is so that even if he obviously lacks the skill and knowledge necessary to present a good defense, and even if it seems that the choice would foreclose any likelihood of success. A defendant's '. . . technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself.' *Faretta v. California, supra,* 422 U.S. at 836, 95 S.Ct. at 2541. A necessary corollary to this doctrine, however, is that the defendant who makes this choice must abide by the consequences of this choice."

*Bell,* 511 F.Supp. at 453.

█ It is clear to this court that the trial judge (Judge Kinney) did everything in her power to protect and balance the rights of all parties involved. The judge on numerous occasions advised George about the questionable wisdom, at best, of conducting a *pro se* defense and thoroughly and meticulously pointed out to him the problems, handicaps and pitfalls he would face and the possible penalties he could suffer as a result of a conviction. The district court explained to George that he was entitled to court-appointed counsel and that if he wished to waive the same and proceed *pro se* the court had to ascertain: (1) that the defendant voluntarily, knowingly, and intelligently waived his right to counsel; (2) that he understood the charges against him and the magnitude of the potential penalty; and, (3) that he understood that he would be expected to handle his defense in accordance with the rules of evidence and procedure. *See Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541–42.

█ Recognizing that placing the burden of transporting and supervising each and every prisoner (pre-trial detainee) requesting law library access upon detention facility officials would be intolerable, the trial judge refused to improperly interfere in the internal jail management and procedures. The court was obviously cognizant of the fact that requiring prison officials to accompany inmates to legal research facilities outside of the jail would give rise to a multitude of security problems and to manpower deficiencies. "[T]he effective management of the detention facility once [an] individual is confined is a valid objective that may justify imposition of conditions and restrictions [on] pretrial detention. . . ." *Bell v. Wolfish,* 441 U.S. 520, 540, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). Even express constitutional guarantees are subject to reasonable limitation or retraction in light of the legitimate security concerns of penal institutions and may be justified when the only alternative would involve an inordinate use of available staff time. *See Bell,* 441 U.S. at 554, 99 S.Ct. at 1882. The Supreme Court has recognized that "prison officials have broad administrative and discretionary authority over the institutions they manage" because prison administration "is 'at best an extraordinarily difficult undertaking'. . . ." *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct.

864, 869, 74 L.Ed.2d 675 (1983) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974)).

After repeatedly offering the petitioner court-appointed counsel, the trial court agreed to provide the petitioner with a number of legal manuals and treatises he requested and directed that the Public Defender's Office comply with reasonable requests for assistance from the petitioner. On only two occasions in the five months preceding his scheduled trial did the petitioner request any assistance from the Public Defender's Office. It should be noted that the petitioner while preparing his *pro se* defense was also in contact with the Northwestern University Law School Legal Clinic on more than one occasion, and additionally boasted that he was in receipt of eighty cases which were sent to him by inmates at other detention facilities. The petitioner's choice to proceed *pro se* was intelligently and voluntarily made with the knowledge that access to unlimited legal research facilities away from his place of detention would not be allowed due to his incarceration. In surveying his overall situation, George made a calculated decision to use every procedure known to him to disrupt the smooth functioning of the criminal justice system, including: reversing his position regarding plea agreements four times; switching his stance on whether to proceed with counsel or *pro se* three times; making impossible demands on the trial court regarding access to a law library removed from his detention facility; etc. The trial judge did everything that could be expected of her to see that the rights of the defendant and the prosecution were protected and that the intent of the criminal justice system was served by a "fair and speedy trial." *United States v. Briggs,* 700 F.2d 408, 415 (7th Cir.), *cert. denied sub nom., Schlacks v. United States,* —— U.S. ——, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

The trial court on numerous occasions properly offered the petitioner court-appointed counsel and when this offer was repeatedly refused, the court went so far as to designate "stand-by" counsel to assist the petitioner with any questions or a full defense if he so desired. This more than

adequately fulfilled the guidelines set forth in *Bounds.* The State offered the defendant George competent, trained legal counsel and we hold it is not the prerogative of a defendant in custody to decide whether he will accept either the State's offer of legal counsel or instead insist that the State provide him with access to "the same facilities that a bar association lawyer would get." *See State v. Simon,* Iowa, 297 N.W.2d 206 (1980).

## IV. CONCLUSION

We hold that the district court erred in its determination that when a prisoner (pretrial detainee) declines to be represented by court-appointed counsel, he must be given access to a law library. A state is not required under the law to offer a defendant law library access once it has fulfilled its constitutional obligation to provide him with competent legal assistance. This court will not read into the Constitution a provision guaranteeing a defendant the right of law library access. We hold that Illinois "satisfied its obligation under the sixth [and fourteenth] amendment[s] when it offered defendant the assistance of counsel which he declined." *Chatman,* 584 F.2d at 1360. The decision of the district court is RE-VERSED with directions to dismiss the action.