Clarence Edward MORGAN, Robert Gordon Johnstone and Billy Ray Shapley, Plaintiffs,

v.

NEVADA BOARD OF STATE PRISON COMMISSIONERS, an administrative body; Robert List, Richard Bryen and Swackhammer, members thereof; Nevada Department of Prisons, an administrative agency, Charles L. Wolff, Jr., William Lattin, George Sumner, John Ignacio, George Deeds, Wayne Curry, Brenda Burns, William Jorgenson and Stephen Fish, employees thereof, both individually and in their respective capacities, Defendants.

No. CV–R–82–126–ECR.

United States District Court, D. Nevada.

July 9, 1984.

Stephen Mark Stephens, Carson City, Nev., for plaintiffs.

Richard Bryan, Atty. Gen. by Ernest E. Adler, Deputy, Atty. Gen., Criminal Division, Carson City, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Robert Johnstone, an inmate at Nevada State Prison (NSP) and one of the plaintiffs herein, wrote a letter to the Court received May 9, 1984, alleging that defendants refused to supply sufficient paper supplies for the prison law library at (NSP) to permit him to proceed with this case and to permit other inmates to carry on their various legal actions. His allegations were that he and other inmates were being denied access to the court through a deliberate shortage of paper supplies for the inmates. Mr. Johnstone's letter also complained that he had been disciplined simply for obtaining paper supplies for the law library.

By its order of May 9, 1984, the Court elected to treat Mr. Johnstone's letter as a motion for an order to show cause why an order pursuant to said motion should not be entered by the Court requiring defendants to provide adequate paper supplies for the use of inmates in prosecuting cases before the court, and for a hearing as to the lawfulness of the discipline of Mr. Johnstone.

On May 30, 1984, an evidentiary hearing was held before the Court. Mr. Johnstone was represented at the hearing and is now represented by attorney Stephen Mark Stephens. Defendants are represented by Deputy Attorney General Brian Randall. At the time of the hearing, the parties were given a period of time to file briefs and points and authorities, and such have been filed and considered by the Court.

Paper supplies for indigent NSP inmates who are prosecuting or undertaking the prosecution of court actions are made available through the NSP law library. These paper supplies are used by the inmate law clerks who staff the law library and assist other inmates in respect to legal matters, by general population inmates who may come to the library and obtain such supplies for their own use, and by prisoners in lockup or segregation who obtain their supplies by delivery from the library. The supplies are carefully monitored by the correctional officer who supervises the library. He personally doles out the paper from a locked cabinet and keeps a log as to which prisoners are receiving what supplies. When requests for supplies are received, this officer makes a determination as to the reasonableness of the request and then authorizes the issuance of the supplies accordingly.

There is no credible evidence in the record of any unreasonable waste of these paper supplies. There are some economies which might be achieved but it does appear that almost all of the supplies provided for the inmates are used in a proper fashion in connection with their court cases.

Specific types and sizes of legal paper supplies are required for the use of the inmates because certain courts will accept only paper of specified types and sizes, some of which must contain certain printing of numbered lines, margins and the like. Papers submitted to such courts not in accordance with their rules are returned.

The annual budget for the law library appears to be reasonable and modest in light of the numbers of prisoners involved in court proceedings. The total amount allocated for the library per year is something approximating $7600, which includes expenditures not only for paper supplies, but also for equipment, legal books, legal subscriptions, and the nominal pay which inmate law clerks receive. Most of this court is paid from the prisoners' store fund (this includes receipts from the inmate canteen, hobby craft sales, and may include some receipts from blood donations).

While the record indicates that the budgeted funds are generally used up by the end of each fiscal year, it does appear that, even if that occurs, there are other adequate funds which can reasonably be provided to maintain the prison law library each year. Associate Warden Ignacio testified that he had not turned down any requisition for paper supplies for the prison law library and that there were and are funds available in the prison budget (if not in the prison law library budget) to take care of reasonable expenditures for the prison law library.

The testimony of the inmate law clerks and particularly the former inmate law clerk, Bernard Ybarra, a now paroled former senior law clerk at NSP, taken together with testimony of Correctional Officer Larry Nelson indicate that the paper supplies which the library has required and presently requires are reasonable and are not excessive.

Each month the law library reasonably requires the following amounts of paper supplies:

| Type | Needed Per Month | Estimated Cost[1] |
|---|---|---|
| 28 line bond 8½ x 11 | 1–2¼ reams | $15 ream |
| 28 line onionskin, 8½ x 11 | 4–9 reams | $13.23 approx.ream |

| Type | Needed Per Month | Estimated Cost[1] |
|---|---|---|
| 30–32 line bond 8½ x 13 | 1–1½ reams | $18–$20 ream |
| 30–32 line onionskin 8½ x 13 | 3–4½ reams | $15–$16 ream |
| #10 envelopes; legal letter-size | 80% of box of 500[2] | $ 4.29 box |
| 9 x 12 envelopes | 1 box of 100 | $ 5.08 box |
| 10–10½ x 14–15 envelopes | 1 box of 100 | $ 5.00 box |
| 8½ x 11 paper for letters[3] | 150 sheets | $15 ream |
| paper fpr drafting documents; 8½ x 13 or 14 | 1¼ reams | $ 4–$5 ream |
| legal tablets or substitute tablets | 1 pkg of 12 | $ 4.12 pkg. |

Footnote 1: including printing as required.
Footnote 2: 80% of the supply of #10 envelopes for the law library is used for legal purposes and the balance for other purposes.
Footnote 3: For use for correspondence with the courts, lawyers, court clerks, and otherwise in connection with inmates' cases.

There has been a history of chronic, periodic shortages of paper for use in the law library extending back over some period of time. However, commencing in March of 1984, the paper supplies available in the law library for the use of prisoners began to diminish sharply. By May of 1984, the library was out of several of the categories of supplies. There was no 8½ × 13 or 14 onionskin paper available after April of 1984, for most of the month of May. During the same period of time there was no 8½ × 13 or 14 bond available until just prior to the hearing (and after issuance of the order to show cause) when a supply of such paper was finally obtained. Yet, by the time of the hearing once again no supply of this size bond paper was available. From some time during the first week in May until after the middle of May there was no 8½ × 11 bond or onionskin paper available. A supply of the 8½ × 11 paper was obtained (but only after the issuance of the order to show cause) approximately May 23 or 24, 1984. At the time of the hearing the law library was out of paper for drafting documents (8½ × 13 or 14). The law library was out of all paper during at least a one day period in May, and at the time of the hearing was out of certain classifications of paper.

From April 11 until May 28 the prison law library did not have any supply of 9 × 12 envelopes and there was a substantial period of time in May when the library was out of 10–10½ × 14–15 envelopes. It is

noted that some courts do not permit legal documents to be filed which have been folded, and hence legal-size envelopes are necessary to transmit them if these courts are to accept them.

During the Spring of 1984 the law library was out of yellow legal tablets but was able to supply $8\frac{1}{2} \times 11$ white tablets in lieu of them.

 The defendants are required to provide a reasonable supply of paper and envelopes for the indigent inmates so as to permit them access to the courts. This has not been done. Litigation is almost always carried on against strict time deadlines. The time constraints are often brief. The inmates are deprived of their right of access to the courts if paper supplies are not readily available on a reasonable basis. Brief periods during which such paper supplies are not available may on occasion be excused and may not prejudice the inmates' litigation. However, in this case such supplies have been unavailable for days and sometimes weeks at a time. The inmates have a constitutional right of access to the courts and in this connection to the paper necessary therefor. *Bounds v. Smith*, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). They are deprived of such right when, as here, paper supplies are not made available for their use.

Inmates are entitled to a meaningful opportunity to present their claims to the courts. *Storseth v. Spellman*, 654 F.2d 1349 at 1352 (9th Cir.1981). Such right requires a reasonable supply of paper for their use.

 The exact explanation as to why the paper was not available is not all that clear. It may be inferred from the circumstances that it might have been due to the deliberate act of the prison officials who are the defendants herein. On the other hand, it may have been because of a breakdown in the supply procedures within the prison system or due to negligence in ordering or delivering supplies at an appropriate time. Whichever of these aforementioned explanations are the reasons for the failure of

defendants to provide a reasonable, adequate paper supply for use at the NSP law library, plaintiffs are entitled to an injunction to require that such supplies be maintained as they are needed, but in no less amounts than the tabulation listed above which reflects past usage. The preponderance of the evidence is that such shortages will recur in the future, unless an injunction is entered by this Court.

 If the threat of injury is real, injunctive relief is appropriate. *Treasure Val. Potato Bar. Ass'n v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 218 (9th Cir.1974). Where, as here, the Court has found that the illegal conduct probably will recur in the future if not enjoined, the remedy of injunction is available. *See Walla Walla City v. Walla Walla Water Co.*, 172 U.S. 1, 12, 19 S.Ct. 77, 82, 43 L.Ed. 341 (1898). *Long v. United States I.R.S.*, 693 F.2d 907, 909 (9th Cir.1982). Even if the defendants were to volunteer to cease their conduct which has resulted in a shortage of paper, the Court could issue an injunction. *See Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir.1984). The balancing of the equities of the parties in light of the effect on them of the granting or withholding of the injunction, calls for its granting in this case. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

This Order shall constitute the Court's findings of fact and conclusions of law.

IT IS, THEREFORE, HEREBY ORDERED that a permanent injunction shall issue against defendants to require them to provide paper for the inmates so as to permit the inmates constitutional access to the courts.

 Plaintiff Robert Gordon Johnstone alleges that he was unlawfully disciplined on the charge of obtaining paper supplies for the law library. However, the preponderance of the evidence does not support the claim that such discipline was unlawful. While the record presents some evidence of possible retaliation by the prison officials as against inmate law clerks for helping

other inmates with their court proceedings, the evidence which was adduced here is not sufficient to support the proposition that Mr. Johnstone was disciplined as a matter of retaliation or for a reason other than violation of the rules of the institution. Therefore no order will be entered at this time with respect to either the discipline of Mr. Johnstone relative to his obtaining paper supplies for the law library or to restrain retaliation against Mr. Johnstone or the other plaintiffs in this case. Nonetheless, the Court does not anticipate that the prison officials will retaliate against plaintiffs for bringing this action, or Mr. Johnstone for bringing this motion, as such would be highly improper and unlawful.