779 P.2d 1290

William Ross KNIGHT, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Gloria Ybarra and The Honorable Walter Jackson, judges thereof, Respondent Judges,

STATE of Arizona, Real Party in Interest.

No. 1 CA–SA 88–189.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 5, 1989.

552

William R. Knight, Phoenix, petitioner in pro per.

Thomas E. Collins, Maricopa County Atty. by John J. MacIntyre, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

JACOBSON, Judge.

The issue raised in this special action is whether the trial court deprived petitioner of his constitutional right of access to the courts while in jail custody awaiting trial by denying his pretrial motion for direct access to the law library, long distance telephone access to witnesses outside of Maricopa County, and for additional legal supplies to prepare his defense. Specifically, petitioner challenges the constitutionality of the "paging system" in use at the Madison Street Jail Law Library to provide inmates with legal information.[1] For the reasons that follow, we accept special action jurisdiction but deny relief.

### Factual and Procedural Background

Petitioner is presently awaiting trial on two counts of armed robbery. On August 3, 1988, the trial court granted his motion to waive counsel and proceed *pro per*, and appointed a deputy public defender to act as his advisory counsel.

On August 22, 1988, petitioner filed a "Motion Re: Propria Persona," seeking, among other things, a court order allowing him to have physical access to the Madison Street Jail Law Library, which is located on the 4th floor in the building where he is housed on another floor. He also requested that the county supply him with legal pads, pens, highlighters and file folders so that he could prepare his defense, that he have telephone access to witnesses outside of Maricopa County, and that he be appointed a private investigator from the Public Defender's Office. Petitioner alleges that the state did not oppose these requests. On September 2, 1988, with the exception of the appointment of a private investigator, the trial court denied petitioner's motion on the ground that petitioner's requests could be handled through the county jail's administrative grievance system. The court then denied defendant's oral motion for the use of law library, telephone use outside Maricopa County, legal supplies and discovery matters "as premature."

Petitioner brought this special action from the trial court's denial of this motion, contending he had exhausted the grievance procedure and arguing that the court had effectively denied him meaningful access to the courts. These contentions are based on the following facts.

Based upon a point system, petitioner's point accumulation places him in the highest and most dangerous security classification. However, all inmates at the jail, whether maximum security or not, are denied physical access to the law library, and must conduct legal research through a paging system. The paging system requires that petitioner must fill out an inmate request form listing specific cases or statutes, send it through the institution mail to the law library, and receive photocopies of his requests, usually within 48 hours.

The staff at the law library consists of four law clerks, all of whom are law school graduates. Because the law library is so small, it has "[a]bsolutely no room for anyone else," and a "paging system" is used to retrieve requested legal information for all inmates, regardless of their security classi-

---

1. A "paging system" allows an inmate to request certain specific volumes from the law library. "The significant features of such a system are that the prisoner must know in advance which volumes he will need to review and that the process of ordering and returning books drastically prolongs legal research." *Toussaint v. McCarthy*, 801 F.2d 1080, 1109 n. 30 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

fication. When an inmate completes a request form, the staff processes the form by locating and photocopying the requested item and returning it for distribution to the inmate, normally the same day the request is received. The law library is not a secured environment, and no inmates other than trustees are allowed direct access. Although the law clerks do not limit the amount of information distributed to an inmate, they do not provide any legal advice to inmates. They merely provide the written documents requested, with no additional research or explanation. The supervisor further testified that unless an inmate includes specific information on the request form, such as case citation, book title and author or edition, the law clerks would be unable to respond to the request. The law clerks also decide if the requested material is relevant to the inmate's case before they send it, and often request "some justification before we spend the money to duplicate this material" by asking the inmate "What is it you need this for?"

After conferencing this case, this court granted special action jurisdiction, finding that petitioner had raised a colorable constitutional claim that need not be first administratively adjudicated to be justiciable. We remanded this matter to the trial court to conduct an evidentiary hearing based on the following findings:

> The court is of the opinion that the existing "paging" system at the Madison Jail Law Library is constitutionally permissible, provided the defendant is receiving adequate assistance by petitioner's appointed advisory counsel. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The defendant has alleged that his advisory counsel is rendering ineffective legal research assistance. If advisory counsel is found to be adequately assisting petitioner in the preparation of his defense, no direct access to the law library is required.

We further ordered that, if the trial court found petitioner's advisory counsel to be providing inadequate research assistance, the court should explore alternative solutions, including allowing petitioner's direct access to the law library.

On January 16, 1989, the trial court held an evidentiary hearing on the issue raised by our remand. Petitioner's advisory counsel testified that "I just do not have the time to act as a law clerk for an inmate.... just the way my case load is, the number of trials, things that have to be done. It's just not workable." He suggested that the court appoint a paralegal to assist petitioner in performing research through the paging system. Petitioner objected to this suggestion, claiming that "in order to have the organization and control in my defense, and the organization and control would be me defending the case, then I would have to do the research.... I can't rely on somebody else doing my work and taking that work into court.... It's personal."

Petitioner requested that the trial court order his direct access to the library, or alternatively, that the court change venue to Pima County, where inmates have direct access to the law library. The court found that, based on the case load and duties of public defenders, petitioner's numerous and complex research requests, and that "given his other responsibilities that he [advisory counsel] is unable to adequately assist Mr. Knight in terms of providing research necessary." The court ordered that petitioner be appointed a paralegal to assist with his research, in addition to maintaining advisory counsel and his appointed investigator. The court further ordered that the jail provide to petitioner an updated list of the available books in the law library.

Following the evidentiary hearing, petitioner sought further relief in this court, claiming that the appointment of a paralegal was not a satisfactory alternative to the constitutional infirmity of the paging system, given the ineffective research assistance of his advisory counsel, and that the court instead should have granted his motion for change of venue to Pima County as a more appropriate remedy.

### Special Action Jurisdiction

It is well established in Arizona that, when an inmate is denied access to the courts which is embodied in the denial

of access to a law library, the appropriate remedy is to seek special action relief, which encompasses the common law writ of mandamus. *Salstrom v. State*, 148 Ariz. 382, 384, 714 P.2d 875, 877 (App.1986). Moreover, this issue is one of statewide importance affecting all inmates who are self-represented. We, therefore, accept special action jurisdiction.

### Lack of Physical Access to the Law Library

#### a. The Paging System and Assistance of Advisory Counsel

In 1977, the United States Supreme Court established that the constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing either direct access to adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

In applying this rule, the federal courts have consistently struck down jail procedures similar to the "paging system" used at the Madison Street Jail as constituting inadequate access to the courts. *See, e.g., Morrow v. Harwell*, 768 F.2d 619 (5th Cir. 1985), later proceeding, 640 F.Supp. 225 (W.D.Tex.1986). The *Morrow* court held that an inmate bookmobile service provided constitutionally inadequate access to legal research, absent help from licensed attorneys, because no digest or other case finder system was available to help prisoners ascertain which volumes to order from the library, or to cross-reference between volumes. 768 F.2d at 622–23. *See also Toussaint v. McCarthy*, 801 F.2d 1080, 1109 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (paging system "significantly impairs effective legal research"); *Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir.1986) (paging system denied prisoner meaningful access to courts in the absence of "direct legal assistance"); *Corgain v. Miller*, 708 F.2d 1241, 1250 (7th Cir.1983) (paging system requirement of exact citation for photocopying characterized as a "Catch–22" in absence

of assistance to refer to other reference materials); *Williams v. Leeke*, 584 F.2d 1336 (4th Cir.1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979).

Such "paging systems," however, have been upheld as constitutionally adequate in situations where an inmate had additional access to advisory counsel either by mail or telephone. *See, e.g., Peterkin v. Jeffes*, 661 F.Supp. 895 (E.D.Pa.1987), *aff'd in part*, 855 F.2d 1021 (3d Cir.1988). The effect of access to an appointed advisory counsel normally overcomes any research handicap that restrictions on access to a jail library impose on an inmate. The seventh circuit has reasoned that the inmate could overcome the handicap of insufficient access to library materials by directing his appointed counsel to obtain the needed materials from a more complete library. *United States v. Garza*, 664 F.2d 135, 142 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982). Several state supreme courts have held that an inmate has "the functional equivalent" of a law library in the form of a public defender who is available to perform necessary research. *State v. Ahearn*, 137 Vt. 253, 403 A.2d 696 (1979); *People v. Rice*, 40 Colo. App. 357, 579 P.2d 647 (1978), *cert. denied*, 439 U.S. 898, 99 S.Ct. 261, 58 L.Ed.2d 245 (1978).

Based on these principles, this court initially determined that the paging system currently in use at the Madison Street Jail Law Library was a constitutionally permissible alternative to direct access to the law library "provided the defendant is receiving adequate assistance by petitioner's appointed advisory counsel." We cautioned, however, that a "paging system which limits the petitioner to only books requested is constitutionally infirm if adequate advisory counsel assistance is not provided."

#### b. Appointment of a Paralegal as an Alternative Remedy

■ Petitioner argues that the trial court's finding that advisory counsel is unable to assist the petitioner and the appointment of a paralegal to assist him in legal research so that he can effectively

utilize the paging system does not constitute an acceptable constitutional alternative to direct access to the library. We disagree.

In *Bounds v. Smith*, the Supreme Court acknowledged the impossibility of affording direct access to an adequate law library to all inmates. The Court specifically suggested several alternative means to assure meaningful access to the courts, including "the use of paraprofessionals." *Bounds*, 430 U.S. at 831, 97 S.Ct. at 1499. The court concluded:

> [A] legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards.

*Id.* at 832, 97 S.Ct. at 1500.

Generally, when an inmate is denied access to a law library for security or other reasons, and when alternative means are satisfied by his having the assistance of persons trained in the law, the court need not order direct library access. *Bounds v. Smith;* Annotation, *Sufficiency of Access to Legal Research Facilities Afforded Defendant Confined in State Prison or Local Jail*, 23 A.L.R. 4th 590 (1983 & Supp. Sept. 1988); *see also State v. Rollie*, 585 S.W.2d 78 (Mo.App.1979); *Wilkie v. State*, 98 Nev. 192, 644 P.2d 508 (1982). Here, the assistance of a paralegal will enable petitioner to overcome any handicap the paging system imposes by giving him the means to determine which case citations and volumes he needs to request to perform his research. By directing his trained paralegal to explore alternative legal theories for his defense, he will be able to discover which sources to request through the paging system. His objection that a paralegal will take the "organization and control" of his case away from him is not supported by any evidence or allegation of this occurrence. To the contrary, one of petitioner's witnesses at the evidentiary hearing, another *pro per* inmate at the jail, testified that the paralegal he had been appointed to assist in his self-representation had been helpful and had saved him research time; we note that petitioner has been appointed the same paralegal, who will presumably work as hard for him. Petitioner has not complained about the particular paralegal appointed for him, only about the court's choice of appointing a paralegal at all. Under these circumstances, we find no constitutional infirmity under *Bounds* in the trial court's appointment of a paralegal to assist petitioner in using the paging system.

■ We further reject petitioner's argument that he has been denied equal protection because Pima County Jail inmates are allowed direct access to a law library. The fact that prisoners at a different jail have access does not violate equal protection when the different treatment stems from the different location of the jail and the different size and security of the facilities; such discrimination is neither arbitrary or capricious. *See Martin v. Phelps*, 380 So.2d 164 (La.App.1979).

■ Furthermore, we find no abuse of discretion in the trial court's denial of petitioner's motion for change of venue to Pima County as a proposed alternative to direct access. It is true that transfer to a different penal institution with a larger or more accessible law library has been used as an acceptable *Bounds* method to afford access to legal materials. *See Fort v. Reed*, 623 F.Supp. 1106 (E.D.Wash.1985); *Portis v. Evans*, 250 Ga. 239, 297 S.E.2d 248 (1982). However, the rule of law established following *Bounds* is that a prisoner does not have the right to select the form his access to legal materials should take. *People v. George*, 85 Ill.App.3d 443, 40 Ill.Dec. 733, 406 N.E.2d 936 (1980). Prison authorities have discretion in determining how to provide access to legal materials while at the same time carrying out their security and discipline responsibilities. *Crawford v. Smith*, 578 P.2d 1282 (Utah 1978). Neither prison officials nor the courts are required to adopt every prisoner proposal to facilitate an inmate's access to the courts. *Procunier v. Martinez*, 416 U.S. 396, 420, 94 S.Ct. 1800, 1815, 40 L.Ed.2d 224, 244 (1974), *overruled on other grounds, Thornburgh v. Abbott*, —— U.S. ——, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The constitutional question is not whether other methods of access may suffice but whether the method selected is constitutionally adequate. *Valentine v.*

*Beyer*, 850 F.2d 951 (3d Cir.1988). Because we have found that the alternative method adopted by the trial court meets the constitutional standards of *Bounds*, we find no abuse of discretion in the court's rejection of petitioner's alternative proposal that venue be changed to Pima County.

### Privacy of Research Requests

■ Petitioner also claims that he lacks privacy in preparing his defense because his research requests through the paging system are not confidential, but rather are capable of being read by three or four different jail staff members because of the procedure used in processing these requests.

We find no constitutional violation in this procedure. Petitioner has no constitutional right to privacy of his research requests. As long as jail officials do not prevent him from sending or receiving legal materials, no violation of his right to access to the courts has occurred. *See generally* Annotation, *Censorship of Prisoners' "Legal" Mail*, 47 A.L.R.3d 1150 (1973 & Supp. Aug. 1988). The request form necessarily must be read by jail officials to determine what petitioner wants, to whom it should be routed, and how to process it. We hardly see how this would prejudice petitioner's defense or deprive him of some basic right regarding access to the courts. As stated by the supervisor of the law library at the evidentiary hearing, "I don't know what is so confidential about asking for 93 Supreme Court 517."

### Telephone Access

■ Petitioner also complains that the jail policy preventing him from making long distance calls to witnesses restricts his access to the courts and impedes his ability to prepare his defense. We disagree.

A jail must give a *pro per* inmate access to a telephone to enable him to secure an investigator or advisory counsel as part of his right to meaningfully represent himself and present a defense. *See Milton v. Morris*, 767 F.2d 1443 (9th Cir.1985). Petition-

er admits he is allowed to make local calls. He has been appointed both an investigator and an advisory counsel whom he may contact by a local call to request they interview his witnesses for him. We find no constitutional deprivation under these circumstances in the jail's restriction on long distance calls.

### Legal Supplies

■ Petitioner further complains that the trial court's denial of his request for a typewriter, hi-lighters and folders impedes his ability to prepare a defense. Although the state is constitutionally required to supply an inmate with materials necessary to prepare legal papers, the state is not obligated to supply him with ancillary supplies such as paper clips, a typewriter, or photocopying facilities. *Nowlin v. Scurr*, 331 N.W.2d 394 (Iowa 1983). However, petitioner must be supplied with a reasonable amount of writing paper, pencils, carbon paper, grievance forms, envelopes, and tablets, to enable him to meet his legal needs. *See Knop v. Johnson*, 685 F.Supp. 636, 649–50 (W.D.Mich.1988); *Morgan v. Nevada Bd. of State Prison Com'rs*, 593 F.Supp. 621 (D.Nev.1984); *see also* American Correctional Association, *Standards for Adult Correctional Institutions*, 2–4327, at 86 (1981), revised in *Correctional Standards Supplement*, 2–4326 at 42 (Jan. 1988). The Supreme Court has acknowledged that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. at 824–25, 97 S.Ct. at 1496. The policies in effect at the Madison Street Jail appear to meet these requirements.[2]

Regarding petitioner's request for a typewriter, we note that this court has no requirement that pleadings be typed, but requires only that briefs be "clear and legible." *See* Rule 31.13, Arizona Rules of Criminal Procedure. Similarly, the Maricopa County Superior Court does not require

---

**2.** The Maricopa County Sheriff's Office Policy on Pro Per Inmates, Detention Directive # 87–8, provides as follows:

E. *Supplies*—Due to the inmate's requirement to prepare defense material for presentation in court, the Pro Per inmate may re-

*pro per* criminal pleadings be typed. *See* Rule 1.5, Arizona Rules of Criminal Procedure (only requirement is that pleadings be filed on 8½ × 11 ″ paper); Rule 2.15, Maricopa County Superior Court Local Rules (information required on documents shall be "typewritten or printed"). Indeed, petitioner's lengthy and persuasive pleadings filed in both the trial court and in this court have all been handwritten in a "clear and legible" manner, and he has not been prejudiced by his lack of a typewriter. We thus find no abuse of discretion in the trial court's denial of petitioner's request for a typewriter.

For the foregoing reasons, we deny petitioner's request for relief. The stay of the trial proceedings previously entered in this matter is hereby dissolved.

FIDEL, P.J., and EUBANK, J., concur.

quire special office supplies and/or materials to prepare such defense. Basic office materials (i.e. high-lighters, hole punches, binders, etc.) may be authorized for Pro Per inmates. Special supply requests shall be submitted to the facility commander for approval. If the materials cannot be brought into the jail due to a bona fide security consideration, the inmate will be notified in writing by the facility commander.

We note that petitioner has not provided this court with evidence that he has either requested or been denied these supplies through this procedure.