831 P.2d 830

**Bryan L. FINDLAY, Petitioner–Appellant,**

v.

**Samuel A. LEWIS, Director, Arizona Department of Corrections; John Aventi, Warden, Respondents–Appellees.**

**No. 1 CA–HC 90–004.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 7, 1991.

Review Granted June 30, 1992.

Grant Woods, Atty. Gen. by Ronald M. Andersen, Asst. Atty. Gen., and Bruce E. Rosenberg (Rule 38 Student Intern), Phoenix, for respondents-appellees.

Bryan L. Findlay, in pro. per.

## OPINION

LANKFORD, Presiding Judge.

This case was presented to us on appeal from the superior court's dismissal of the appellant's petition for a writ of habeas corpus.

By order dated August 15, 1991, this court elected to treat this proceeding as a petition for special action relief. *See Brown v. State*, 117 Ariz. 476, 573 P.2d 876 (1978); *Goodman v. State*, 96 Ariz. 139, 393 P.2d 148 (1964); *see generally* Arizona Rules of Procedure for Special Actions, Ariz.Rev.Stat.Ann., Vol. 17B. In the remainder of this opinion, we will refer to Mr. Findlay as the petitioner rather than as the appellant.

This court's order also accepted jurisdiction in this matter, granted the relief requested, and stated that an opinion would be issued at a later date. This is the promised opinion.

## I.

Petitioner is a prisoner incarcerated in an Arizona Prison. He was initially incarcerated in Utah but was transferred to Arizona. Petitioner alleges that the transfer was without his consent. Both petitioner and respondents agree that the transfer was on the initiative of the Utah Department of Corrections under the Western Interstate Correctional Compact. ("Compact.") The Compact is a multistate agreement adopted by Arizona and codified as A.R.S. §§ 31-471 to -475.

Petitioner filed what he denominated as a petition for a writ of habeas corpus in the Superior Court of Maricopa County, Arizona. Petitioner filed the petition on his own behalf, without the benefit of legal counsel.

The petition filed in the superior court asserted "unconstitutional confined" [sic] as one of petitioner's claims. The petition elaborated that petitioner desired to be returned to Utah to serve his term of imprisonment. For present purposes, however, the more important part of the petition was a claim that officials of the Arizona Department of Corrections had denied petitioner's constitutional right of access to the courts.

After the superior court granted the respondent officials' motion to dismiss the petition, petitioner appealed to this court. Petitioner here reasserts his constitutional right of access to the courts. He also claims that the superior court abused its discretion in denying his motion for an extension of time to file a response to the respondents' motion to dismiss.

The record reveals that the superior court did deny petitioner's motion for more time. Petitioner, who was being held in

protective custody at the Florence, Arizona prison, asserted that he lacked sufficient access to the prison law library to prepare an adequate response to the motion to dismiss. The record reflects no opposition to the motion for more time.

Petitioner eventually filed a response to the motion to dismiss his petition. However, the record indicates that the superior court considered only the motion to dismiss and not petitioner's response in ruling upon this motion.

In connection with his constitutional claim, petitioner stated in an affidavit filed in the superior court that both the Arizona Department of Corrections and Utah prison officials had declined to provide him with access to any materials relating to Utah law so that he could challenge his transfer to the Arizona prison. His affidavit also revealed his desire to file other pleadings in the Utah courts, including a challenge to his conviction and to Utah's refusal to consider granting his early release.

The respondents filed no affidavits and presented no other evidence in the superior court.[1] In their motion to dismiss, respondents did not dispute that petitioner had no access to legal materials as described in his affidavit. Nor did they dispute that these materials were reasonably necessary to assert the petitioner's claims. The respondents instead asserted that petitioner could obtain legal assistance from the State of Utah but provided no details regarding available legal resources and provided no evidence to support this assertion.

Petitioner is proceeding without counsel in both the superior court and appellate proceedings. The record fails to indicate that any form of legal assistance has been made available to him by the Arizona Department of Corrections or by the State of Utah. Although the respondents vaguely assert on appeal that petitioner "has been given full access to all forms of assistance available to all other Arizona inmates," this

statement is unsupported by the record. Equally important is that this statement reveals nothing about whether petitioner, a prisoner held under authority of Utah law, has available to him legal resources regarding matters of Utah law and procedure.

## II.

A prisoner has an undeniable right of access to the courts protected by the United States Constitution. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). The right of access clearly extends to prisoners' challenges to the legality of their confinement or conditions of their confinement, the very kind of claim made here by petitioner. *See Bounds*, 430 U.S. at 827–28, 97 S.Ct. at 1497–98; *Johnson*, 393 U.S. at 485, 89 S.Ct. at 748.

Indeed, the United States Supreme Court has observed that prisoners' habeas corpus actions "are of 'fundamental importance ... in our constitutional scheme' because they directly protect our most valued rights." *Bounds*, 430 U.S. at 827, 97 S.Ct. at 1498 (quoting *Johnson*, 393 U.S. at 485, 89 S.Ct. at 748). Access to the courts is a fundamental right because without an avenue to judicial enforcement of individual rights, " '[a]ll other rights [of a prisoner] are illusory.' " *See Taylor v. Sterrett*, 532 F.2d 462, 470 (5th Cir.1976) (quoting *McCray v. Sullivan*, 509 F.2d 1332, 1337 (5th Cir.1975), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975)).

The right of access imposes an affirmative obligation on the state when the litigant is an indigent prisoner. *See Bounds*, 430 U.S. at 828–832, 97 S.Ct. at 1498–1500; *Johnson*, 393 U.S. at 485–86, 89 S.Ct. at 748–49. In this case, petitioner filed an uncontroverted affidavit of indi-

---

1. The superior court entered its order dismissing Findlay's petition on the day after Findlay's response to the motion to dismiss was received by the court. Findlay's affidavit was attached to his response. Thus, the State had no occasion to respond specifically to the affidavit. However, Findlay's allegation of lack of access to necessary legal materials was part of his original petition.

gency which triggered the state's affirmative obligation.

■ At a minimum, the federal constitution requires that the states provide the litigant "an adequate opportunity to present his claims fairly." *Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). In more concrete terms, the right of access to the courts requires that states provide inmates with either adequate law libraries or adequate assistance from law-trained persons. *See Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. For the literate inmate, reasonable access to a law library containing appropriately helpful materials generally suffices. However, prisoners who are illiterate, poorly educated, of limited intellectual capacity, or non-English speaking may require the assistance of a lawyer, paralegal, or "jailhouse lawyer." *Johnson,* 393 U.S. at 487, 89 S.Ct. at 750; *see also Wolff,* 418 U.S. at 570, 94 S.Ct. at 2981.

■ Thus, the state is not always bound to provide a lawyer to the prisoner. However, it must provide some form of legal assistance adequate for a meaningful opportunity to be heard in court, whether through access to a law library, a lawyer, or a knowledgeable fellow prisoner.

■ When the prisoner asserts a prima facie claim of lack of access to the courts, the ultimate burden of proving adequate access falls to the state. *Carter v. Fair,* 786 F.2d 433, 436 (1st Cir.1986); *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir.1981). Petitioner made a prima facie claim when he raised claims in an Arizona court which are controlled by Utah law and which must be asserted in Utah courts, and asserted that he had been denied access to any Utah legal materials.

The respondents did not attempt to disprove petitioner's assertions in the superior court. They instead relied on a legal argument that petitioner was not entitled to the legal assistance he sought. We next consider the respondents' argument.

## III.

■ The respondents first argue that petitioner's claim of unconstitutional confinement has no merit on its face. They argue that petitioner has no constitutional right to be incarcerated in any particular place and that the Arizona courts have no jurisdiction over the Utah correctional authorities.

This argument places the cart before the horse. If the prisoner lacks the law books he needs and has no law-trained assistance, he cannot be expected to file a well-pleaded petition. The United States Supreme Court considered the very argument made by respondents here and rejected it in *Bounds:*

It would verge on incompetence for a lawyer to file an initial pleading without researching such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and types of relief available. Most importantly, of course, a lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action.

If a lawyer must perform such preliminary research, it is no less vital for a *pro se* prisoner. Indeed, despite the "less stringent standards" by which a *pro se* pleading is judged, *Haines v. Kerner,* 404 U.S. 519, 520 [92 S.Ct. 594, 595, 30 L.Ed.2d 652] (1972), it is often more important that a prisoner complaint set forth a nonfrivolous claim meeting all procedural prerequisites, since the court may pass on the complaint's sufficiency before allowing filing *in forma pauperis* and may dismiss the case if it is deemed frivolous. *See* 28 U.S.C. § 1915. Moreover, if the State files a response to a *pro se* pleading, it will undoubtedly contain seemingly authoritative citations. Without a library, an inmate will be unable to rebut the State's argument.

*Bounds,* 430 U.S. at 825–26, 97 S.Ct. at 1497 (footnotes omitted).

The merits of the prisoner's claim cannot be reached until he has had an adequate opportunity to prepare his claim. Although the petition may not at present

appear to raise any meritorious claims, the petitioner—with the legal assistance required by the Constitution—might be able to present a claim worthy of adjudication on its merits. *See Bounds,* 430 U.S. at 826 and n. 14, 97 S.Ct. at 1497 and n. 14 (legal information may enable prisoner to state a colorable claim). We simply cannot foretell the nature of a claim which might be made with the benefit of adequate legal resources.

Although the superior court evaluated petitioner's petition and apparently found that it lacked merit, that does not cure the constitutional violation. If the respondents had provided adequate legal resources, the petitioner may have found the law and facts which would have enabled him to make a colorable claim. The superior court judge here is certainly knowledgeable and diligent; however, "even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation." *Bounds,* 430 U.S. at 826, 97 S.Ct. at 1497. In addition, the superior court's order appears to have found the petition without merit because the claim of unconstitutional confinement should have been addressed to the Utah courts. Even if this were correct,[2] a matter we do not reach, this finding places the petitioner in a dilemma: he is required by Arizona to seek relief from the Utah courts, yet he is confined in Arizona, where prison authorities have failed to provide him the means necessary for access to the Utah courts.

▇ The respondents also argue that petitioner might be able to obtain legal counsel in Utah. Relying on *Salstrom v. Arizona,* 148 Ariz. 382, 714 P.2d 875 (App. 1986), respondents contend that the possible availability of counsel provided by the courts of Utah satisfies the Constitution. Respondents have neither cited any Utah statute or regulation, nor produced any evidence, that a lawyer is in fact available to petitioner to assist him in formulating and advancing the claims he has described.

This lack of evidence constitutes a crucial distinction between this case and *Salstrom:* in the latter case, the state provided the courts with evidence of adequate access to the Nevada courts in the form of a Nevada statute providing for the appointment of counsel in post-conviction proceedings. 148 Ariz. at 385, 714 P.2d at 878. The respondents in this case point to no such assurance under Utah law. This is a critical omission because, as we noted above, the state bears the ultimate burden of proving the adequacy of the prisoner's access to the courts when a prisoner has made a prima facie case of lack of access.

More fundamentally, we must respectfully disagree with the *Salstrom* holding that a statute providing for appointment of counsel for post-conviction relief proceedings by the courts in the prisoner's state of origin is sufficient. First, we are not assured that the petitioner's claims fall within the ambit of post-conviction relief proceedings in Utah.

Second, the affirmative obligations imposed by the Constitution are those of the states generally, and more particularly of the state agencies that have custody of the litigant. *Cf. Bounds,* 430 U.S. at 818–821, 97 S.Ct. at 1493–94 (relief granted against prison authorities on claim of failure of state to provide access to courts). The Arizona Department of Corrections is the Arizona state agency with physical custody and control of petitioner. The respondent Arizona officials are the representatives of government responsible for ensuring that prisoners in their custody have access to the courts, not the Utah prison system and not the Utah courts.[3]

This point is confirmed by the Compact under which petitioner is imprisoned in Arizona:

---

2. With the benefit of law books or the advice of someone trained in the law, Findlay may find that his claim can only be asserted in Utah and dismiss his Arizona petition to pursue the matter in a Utah forum.

3. The mere fact that the court with jurisdiction over a prisoner's claim is located in another state or the fact that the prisoner's claims are governed by the law of another state, does not in any way diminish the prisoner's constitutional right of access.

All inmates who may be confined in an institution pursuant to the provisions of this Compact shall be ... treated equally with such similar inmates of the receiving state.... The fact of confinement in a receiving state shall not deprive any inmate ... of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

A.R.S. § 31–471 art. IV(e). This statute imposes upon the receiving state (here, Arizona) the responsibility for ensuring the prisoner's right of access to the courts.

■ Even if the Compact did not so provide, an incarcerating authority simply cannot evade its constitutional responsibilities by suggesting that perhaps the court of another state will relieve it of its obligations by providing counsel. We cannot agree with *Salstrom* that the possibility of obtaining such counsel under the sending state's laws is sufficient.

The respondents suggest for the first time on appeal that it would be burdensome for them to provide books covering the laws of the various states which have transferred prisoners to Arizona under the Compact. The record is devoid of any evidence of the number of such prisoners or of the number of their originating states. Nor is there any evidence regarding the cost of books which would provide minimally sufficient access to the relevant Utah criminal laws and rules.

More importantly, the courts do not dictate that prison authorities comply with their constitutional obligations by providing law books or indeed by any particular method. As the respondents themselves acknowledge, quoting a prior decision of this court,

[T]he states are free to choose among a variety of methods or combination of methods, including providing attorneys, legal materials, or other reasonable methods, in order to provide meaningful access.

Neither *Bounds* nor its progeny requires that every state correctional facility and every county and city jail provide access to an extensive law library.

*Berry v. Department of Corrections,* 144 Ariz. 318, 320, 697 P.2d 711, 713 (App.1985) (citation omitted). *See also Knight v. Superior Court,* 161 Ariz. 551, 779 P.2d 1290 (App.1989). The respondents must initially decide how best to meet their obligations under the Constitution. The fact that one or all of the methods available require some expense is irrelevant if to do less falls short of constitutionally-required court access. Respondents may discharge their obligations by whatever method they regard as least costly so long as the method selected ensures adequate access to the courts.

Additionally, every prisoner received by Arizona pursuant to the Compact is accepted only under a contract between the sending and receiving states by which the sending state must reimburse the receiving state for the expenses of maintaining the inmate, including the cost of "any participation in or receipt by inmates of ... correctional services, facilities [or] programs ... not reasonably included as part of normal maintenance." A.R.S. § 31–471 art. III(a)(2). Arizona thus may be entitled to receive reimbursement from Utah for this expense.

■ Notably, respondents do not dispute petitioner's contention that the law library facilities available to him are inadequate because they do not include Utah materials essential to his claims. A prison system's obligations under the Constitution cannot be satisfied by providing legal materials which are inadequate. *See generally Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491. The adequacy of legal materials must be measured by whether they are of sufficient practical value in preparing the pleading and litigating the case. *See, e.g., Gilmore v. Lynch,* 319 F.Supp. 105 (N.D.Cal.1970), *aff'd per curiam sub nom. Young v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (review of adequacy of prison library collection).

Under the United States Constitution, the petitioner is guaranteed the right of access to the courts. He must receive no less. The Arizona Department of Corrections must furnish the petitioner with ade-

quate legal materials or assistance to ensure his access to the courts.

### IV.

▮▮▮ The petitioner's second contention is that the superior court abused its discretion in refusing to grant him an extension of time to prepare a response to the motion to dismiss. Petitioner informed the trial court that his access to the prison library was inadequate and relied on a decision of the United States District Court for the District of Arizona (the "District Court Judgment") making a finding to that effect and entering judgment against the Arizona Department of Corrections. The superior court nevertheless denied the petitioner's request for additional time without offering any reason for doing so.

Although the record does not indicate that respondents opposed the request for more time in superior court, on appeal they nevertheless defend the trial court's action upon two grounds. First, they state that the District Court Judgment relied upon by the petitioner is presently on appeal. This assertion misses the thrust of petitioner's undisputed claim that his access to the prison library was insufficient to enable him to prepare a timely, adequate pleading.

Second, respondents defend the trial court's ruling by arguing that petitioner's ability to prepare some sort of response shows that he had adequate access to the library. This argument is without merit. The very purpose of imposing affirmative obligations upon the state to ensure access to the courts is to enable the prisoner to file *adequate* pleadings. Dismissal of the petition as legally deficient comes as no surprise when the petitioner had neither adequate resources to file a proper initial petition nor the resources to defend that petition against a motion to dismiss.

▮▮▮ Moreover, holding an indigent prisoner to strict time deadlines is inconsistent with meaningful access to the courts. Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," ... it should not be impaired by harsh application of technical rules. *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). When the prisoner appears on his own behalf, without the assistance of counsel, the thicket of procedural and substantive rules likely will prove impassable without some minimal degree of judicial tolerance. Pro per litigants are not exempt from the rules. However, their pleadings are judged by " 'less stringent standards.' " *Bounds,* 430 U.S. at 826, 97 S.Ct. at 1497 (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). "Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel." *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir. 1989).

Granting lengthy and repeated extensions of time to file pleadings is not required. Some tolerance, however, may be necessary. This case had been filed in superior court less than three weeks before the petitioner requested his single extension of time of about thirty days. He had not requested any other extensions. Considering that the petitioner's stated reason for the extension was colorable and uncontested, and considering the other circumstances, the superior court abused its discretion in denying the motion for an extension of time to respond to the motion to dismiss.

Therefore, the superior court's judgment dismissing the petition is vacated. The superior court is directed to issue an order to the respondents requiring them to provide necessary legal resources for petitioner to amend his petition in this matter, defend that petition from any future motion to dismiss, and support the petition on the merits. Our disposition evidences no view on our part of the ultimate truth or validity of petitioner's claims. The superior court is further directed to issue an order to the respondents requiring them to provide nec-

essary legal resources for the petitioner to file appropriate pleadings in the Utah courts. The superior court's initial order should not direct the respondents to provide any particular form of legal assistance. However, if the petitioner challenges the adequacy of the required assistance, and if the court after receiving evidence determines that respondents have failed to discharge their burden of proving the adequacy of the provided assistance, then the court may issue more specific orders.

VOSS and CLABORNE, JJ., concur.